UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                               :

UNITED STATES OF AMERICA,           :

                               :

                               :       **MEMORANDUM AND ORDER**

          - against -            :

                               :

NEIL KRAMER, ISADORE A. USEROWITZ   :

a/k/a "Arthur Userowitz," HAROLD WEISBERG, :      1:06-cr-200-ENV-CLP

HAMAD ALI a/k/a "Ahmed Jeran," HAMOOD :

ZOKARI, NAGEEB ALDAYLAM, MOHAMMED :

ALGAHIM a/k/a "Mohamed Kaid," ABDULLAH :

ALHABABI, SALEM AL-MERDAI, ABDO     :

ALWASIA, MOHSEN HUDYIH, FATEH      :

NAGI SALEH,                          :

                               :

               Defendants.       :

                               :

------------------------------------------------------------X

VITALIANO, D.J.

## INTRODUCTION

      Defendant Isadore A. Userowitz ("Userowitz") has been indicted for his alleged role in

an unlicensed international money transmitting business.  Shortly after the indictment was

returned, the United States of America ("Government") seized $1,992,542.53 from one of

Userowitz's bank accounts pursuant to a civil seizure warrant issued under 18 U.S.C. § 981(b).

The Government subsequently opted to pursue the forfeiture criminally and obtained a

superseding criminal indictment naming the funds.  Userowitz has moved for their return,

leaving this Court to decide whether the Government must take any further steps to maintain

lawful custody.  The Court concludes that, if it wants to maintain possession of these funds, the

Government must obtain a criminal seizure warrant, pursuant to 21 U.S.C. § 853(f), and it is

directed either to do so or release the funds by December 15, 2006.

The Government has also filed notices of *lis pendens* on two pieces of real property owned by Userowitz, which are named in the indictment as substitute assets that the Government will use to satisfy a potential forfeiture order if it cannot confiscate the specifically forfeitable assets named in the indictment. Userowitz has moved the Court to vacate these notices as well. The second issue before the Court, then, is whether the Government has any authority to file notices of *lis pendens* on substitute assets at this stage in the proceedings. The Court concludes that the notices of *lis pendens* are not now proper because this criminal proceeding against Userowitz is not an action that would affect title to the real property. Since any interest of the Government in the identified substitute assets of Userowitz cannot be claimed until at least the time of conviction, if not later, the filing of the subject notices of *lis pendens* is without authority. Consequently, the Court will grant Userowitz's motion to vacate them.

## BACKGROUND

On March 27, 2006, a grand jury sitting in the Eastern District of New York, returned an indictment against 14 defendants, including Isadore A. Userowitz, charging various violations of statutes relating to money transmittal, currency reporting, and extortionate debt collection practices. The indictment alleges that defendants operated an unlicensed money transmitting business in which they sent money from the United States to Yemen by check, while avoiding reporting requirements. The indictment charges Userowitz in Count One, with conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371; in Count Two, with operating an unlicensed money transmitting business, in violation of 18 U.S.C. §

1960(a); in Count Three, with conspiracy to avoid international monetary instrument reporting requirements, in violation of 18 U.S.C. § 371; and in Count Four, with evading outbound currency reporting requirements, in violation of 31 U.S.C. § 5324(c)(1), (d)(2).  With respect to the second count, the indictment gives notice that the Government will seek criminal forfeiture, pursuant to 18 U.S.C. § 982, of approximately $4 million, jointly and severally, from eight defendants, including Userowitz.  With respect to the third and fourth counts, the indictment gives notice that the Government will seek criminal forfeiture, pursuant to 31 U.S.C. § 5317(c), of approximately $3 million, jointly and severally, from 13 defendants, including Userowitz.  The indictment lists two of Userowitz's properties, in Montauk and Syosset, New York, as substitute assets, potentially subject to forfeiture under 21 U.S.C. § 853(p).  On March 29, 2006, the Government filed notices of *lis pendens* on these two properties.  Appraisals submitted by the Government indicate that the Montauk property was valued at $1,250,000 on April 6, 2006, and that the Syosset property was valued at $535,000 on March 27, 2006.

On March 27, 2006, the same day the original indictment was returned, United States Magistrate Judge Joan M. Azrack issued a civil seizure warrant authorizing the seizure of all funds from an account in the name of Arthur Userowitz at J.P. Morgan Chase Bank.  These funds were not listed in the criminal indictment.  Magistrate Judge Azrack found probable cause that: (i) the funds constituted property traceable to and/or involved in transactions in violation of 18 U.S.C. § 1960 (unlicensed money transmitting business), and as such, are potentially forfeitable pursuant to 18 U.S.C. § 981; and (ii) the funds constituted property traceable to and/or involved in the violation or conspiracy to violate 31 U.S.C. §§ 5316, 5324(c) (evading reporting

requirements), and as such, are potentially forfeitable pursuant to 31 U.S.C. § 5317(c)(2). $1,992,542.53 was seized from the bank account and deposited in the Department of Treasury's Asset Forfeiture Account.

On May 25, 2006, the United States Customs and Border Protection Agency sent Userowitz notice that it was commencing the administrative forfeiture of funds seized from his bank account. By letter dated June 14, 2006, Userowitz filed a claim for the seized funds requesting, pursuant to 18 U.S.C. § 983(a)(2), that his claim be handled judicially. At this point, the Government was required to act within 90 days, either by obtaining a criminal indictment or filing a civil complaint in order to maintain lawful custody of the funds. See 18 U.S.C. § 983(a)(3)(B). On September 13, 2006, the Government and Userowitz entered a stipulation, which this Court ordered pursuant to 18 U.S.C. § 983(a)(3)(A), extending the Government's time to take either action until September 29, 2006. On September 29, 2006, the Government obtained a superseding indictment, which included in Counts Two, Three, and Four, a forfeiture allegation relating to the funds seized from Userowitz's bank account. The Government took no further action to secure the funds, which were already in its custody.

Userowitz has sought and continues to seek some means to challenge the legal basis of the Government's pretrial retention of his funds. On July 27, 2006, Userowitz moved this Court, pursuant to Fed. R. Crim. P. 41(g), to review Magistrate Judge Azrack's earlier probable cause determination.[1] The instant motion was submitted for decision on November 1, 2006.

---

[1] Userowitz also moved for the return of funds under the civil forfeiture statute's substantial hardship provision. See 18 U.S.C. § 983(f). Given that the Government has decided to pursue criminal forfeiture, it contends that the civil forfeiture statute's substantial hardship provision is inapplicable, thereby mooting Userowitz's request. Userowitz concedes this point. Thus, further inquiry is unnecessary.

**DISCUSSION**

I.       **Lawfulness of the Government's Continued Retention of Funds Seized Pursuant to 18 U.S.C. § 981(b)**

The funds in Userowitz's bank account were originally seized pursuant to 18 U.S.C. § 981(b), which applies to *civil* forfeitures.  It is this civil seizure warrant that is the basis for the Government's continued retention of the funds.  Userowitz contends that since the Government has abandoned its civil forfeiture claim, the warrant is without effect and can no longer serve as the basis for the Government's rightful custody of the funds.  Further, Userowitz argues, since the Government has not taken any other appropriate action to obtain custody, the funds must be released.

When the Government seizes property under the civil statute, 18 U.S.C. § 981, but then chooses to proceed criminally, it must meet two statutory requirements within 90 days of a claim being filed to avoid having to return the property: "(i) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; **and** (ii) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute."  18 U.S.C. § 983(a)(3)(B) (emphasis added).  The original warrant, therefore, does not authorize continued possession after 90 days.  The statute clearly restates this point: "If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute."  18 U.S.C. § 983(a)(3)(c).  Here, it is undisputed that the Government took the first step of obtaining a criminal indictment.  However, the parties dispute whether the Government must do anything else, or more specifically, whether the Government must obtain a

5

criminal seizure warrant too.

The Government contends that no step, including obtaining a criminal seizure warrant, is needed, as it is already in possession of the seized funds. The Government fails to acknowledge, though, that it is only in possession of defendant's seized funds by virtue of Magistrate Judge Azrack's civil seizure warrant, which has expired, *i.e.*, more than 90 days have elapsed from the date Userowitz's claim was filed. In essence, the Government seems to argue that, with assets already in hand, upon the filing of the indictment, its civil seizure warrant effectively converted automatically into a criminal seizure warrant. In any event, the Government has not taken any steps to obtain a criminal seizure warrant or in any other way to perfect its custody claim following the filing of the superseding indictment naming the funds.

The Government's approach would render the words of 18 U.S.C. § 983 meaningless. The statute clearly states that the Government must "take the steps necessary to preserve its right to maintain custody of the property *as provided in the applicable criminal forfeiture statute*." 18 U.S.C. § 983(a)(3)(B) (emphasis added). The Government proposes a reading of the statute that would render the final statutory phrase nugatory. By "take the steps necessary to preserve its right to maintain custody," the Congress did not intend to require that the Government merely give a call to its bank or impound lot to check up on the status of seized property. Instead, the Congress required that the Government meet any separate requirements for seizure and retention of property that may be imposed under the relevant criminal seizure statute. Moreover, the additional step of obtaining a criminal seizure warrant is not necessarily a simple formality because civil and criminal seizure warrants may require different showings. For instance, here,

the applicable criminal forfeiture statute, 21 U.S.C. § 853(f), allows for the pretrial seizure and retention of property only where a less restrictive protective order, *e.g.*, a restraining order or injunction, would be insufficient to assure the property's availability for forfeiture. There is no similar requirement under 18 U.S.C. § 981(b), pursuant to which Magistrate Judge Azrack issued the warrant for Userowitz's funds. So in this case, the Government's proposed approach would allow it to avoid 21 U.S.C. § 853's required showing of the absence of a less restrictive alternative.

While the law on this point is still in its infancy, in the recently decided <u>United States v. Martin</u>, ___ F. Supp. 2d ___, 2006 WL 1896076 (D. Md. Jun. 6, 2006), the Court addressed this issue and wrote that "until the Government got the criminal seizure warrants, [the civil forfeiture statute] required the property's return, and no other warrant authorized its detention. Only by getting the criminal warrants did the Government cure the problem; for a time, then, the Government lacked authority to retain the property." <u>Id.</u> at *6. In <u>Martin</u>, the Government "realized (thanks, probably, to [defendant's] motion) that it needed to take further action and obtained the criminal warrants."[2] <u>Id.</u> <u>Martin</u> underscores this Court's obligation to give effect to the very clear and precise language of the statute which authorizes no short cut seizure or continued retention of a citizen's property. The Government's insistence on that short cut and its

___

[2] The Government may also have been guided by its own policy manual. U.S. Department of Justice Asset Forfeiture Policy Manual, at 19 (Jan. 2006) ("[I]f the Government does not file a civil forfeiture complaint and proceeds only with a criminal forfeiture action, it may not lawfully maintain possession of the property pursuant to the civil seizure warrant alone, but must obtain either a criminal seizure warrant or a pretrial restraining order.") (citing <u>United States v. Schmitz</u>, 153 F.R.D. 136 (E.D. Wis. 1994)).

refusal to take any additional action makes continued retention of the funds unlawful.[3]

As the Government is not currently in lawful possession of the funds seized from Userowitz's account, the Court grants Userowitz's motion for their return.[4]  Of course, the Government may still seek to restrain the funds under 21 U.S.C. § 853(e), (f), and the Court presumes it will do so.  See Martin, 2006 WL 1896076, at *6.  Accordingly, to permit an orderly and efficient process, the Court stays its order on this branch of Userowitz's motion until

---

[3]  The Government relies on In re 2000 White Mercedes, 174 F. Supp. 2d 1268 (M.D. Fla.) (magistrate order), aff'd, 220 F. Supp. 2d 1322 (M.D. Fla. 2001), in arguing that it need not re-seize the funds from itself to maintain custody.  In 2000 White Mercedes, the Court reasoned that re-seizure of property under 21 U.S.C. § 853(f) was not warranted because a restraining order or injunction, under § 853(e), prohibiting the Government from releasing the funds would be sufficient to assure the property's availability at trial.  174 F. Supp. 2d at 1270.  Interestingly, the court went on to add that such an order was not actually necessary because counsel for the Government had represented that the funds were safely secured in the Department of Treasury's Asset Forfeiture Account.  Id. at 1272.  The decision appears to skip a step, however, as it never explains why the Government's continued possession of the property was lawful in the first place.  If, for instance, the property was being held for use as evidence at trial, it could be said that the Government had an independent lawful basis for continued possession.  To the extent, however, that 2000 White Mercedes suggests that the lawful basis for continued possession was the original civil seizure warrant, issued pursuant to 18 U.S.C. § 981(b), this Court cannot accept its conclusion.

[4]  Since the Court grants Userowitz's motion, it need not decide whether a Monsanto hearing on probable cause is necessary.  A Monsanto hearing is a post-restraint, pretrial hearing at which a criminal defendant may challenge the Government's probable cause for restraining seized property.  Perhaps recognizing that Monsanto hearings might be used only to gain a sneak peak of the Government's case and witnesses, thereby wasting prosecutorial resources, a majority of courts have held that such hearings are necessary only where the criminal defendant makes at least an initial showing that he has no other assets with which to retain private counsel.  See United States v. Jamieson, 427 F.3d 394, 406 n.3 (6th Cir. 2005) (cataloguing other circuit's approaches); see also United States v. Farmer, 274 F.3d 800 (4th Cir. 2001); United States v. Jones, 160 F.3d 641 (10th Cir. 1998).  Of course, the Second Circuit has never explicitly held so, and its decision in United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991) (en banc), can "be seen to support the broader notion that without regard to the need to obtain counsel, a defendant is entitled to a hearing on the restraint of his property."  United States v. Kirschenbaum, 156 F.3d 784, 793 (7th Cir. 1998); see also United States v. Millan-Colon, 836 F. Supp. 994, 1006 (S.D.N.Y. 1993) ("A close reading of the Monsanto opinion indicates that the Second Circuit was concerned, not only that the defendant's sixth amendment right to counsel be preserved, but also, that the defendant not be deprived of his property without an opportunity to be heard.").  On the other hand, Judge Hurley has recently written, "the case law is clear . . . that such a hearing is warranted on two narrow grounds only: when there is a claim the restraint of assets hinders a defendant's right to counsel or when there is a claim the restraint renders a defendant indigent."  United States v. Morrison, No. 04-cr-699, 2006 WL 2990481, at *7 (E.D.N.Y. Oct. 19, 2006).  This Court need not presently address the issue but very briefly notes that Userowitz has made absolutely no showing that the seizure of funds has rendered him indigent or hindered his ability to retain counsel.  In fact, defense counsel has made statements on the record to the contrary, and Userowitz has refused to even produce a financial statement.  Cf. Kirschenbaum, 156 F.3d at 792 (bare bones affidavit insufficient to make showing of lack of resources).

December 15, 2006, during which time the Government may seek and obtain a seizure warrant from this Court.

II.     **Validity of Government's Lis Pendens on Substitute Assets**

       A.     *Applicability of Relation Back Principle to Property Forfeitable as Substitute Assets Under 21 U.S.C. § 853(p)*

A criminal forfeiture proceeding is an *in personam* action, meaning that it is brought against a criminal defendant personally, and is limited to his property interests.  <u>See</u> Fed. R. Crim. P. 32.2(c) advisory committee's note.  It is to be distinguished from a civil forfeiture proceeding, which is an *in rem* action brought directly against property that is alleged to be forfeitable.  <u>Id.</u>; <u>United States v. Lester</u>, 85 F.3d 1409, 1414 n.8 (9th Cir. 1996).  Despite criminal forfeiture being an *in personam* action, some of its aspects are similar to that of an *in rem* action; specifically, in a criminal forfeiture action, the Government claims to have superior title in the *specific property* subject to forfeiture.  Such a claim is consistent with the long-recognized common law "taint theory," under which title to property involved in a violation giving rise to forfeiture is said to vest immediately in the Government upon the commission of the illegal act.  <u>See</u> <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 627, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); <u>United States v. Stowell</u>, 133 U.S. 1, 16-17, 10 S.Ct. 244, 33 L.Ed. 555 (1890).  Criminal forfeiture statutes, like the one here at issue, have codified the "taint theory" in their "relation back" provisions.  <u>See</u> 21 U.S.C. § 853(c).[5]

---

[5]  Forfeiture in this case is pursuant to the money laundering statute, 18 U.S.C. § 982, and money reporting statute, 31 U.S.C. § 5317.  Section 982 incorporates the forfeiture "provisions" of the continuing criminal enterprise statute, 21 U.S.C. § 853, except for subsection (d).  Section 5317 incorporates the forfeiture "procedures" of § 853.  As evidenced by language, structure, and legislative history, the forfeiture provisions of § 853 are substantially identical to those of 18 U.S.C. § 1963, the forfeiture provision applicable to the Racketeer Influenced and Corrupt Organizations (RICO) Act.  <u>United States v. Ripinsky</u>, 20 F.3d 359, 362 n.3 (9th Cir. 1994).  Thus, in interpreting

This case, nevertheless, raises a threshold and fundamental question – before conviction, what claim of property right, if any, does the Government have in *substitute* property, that is, property not specifically forfeitable but which the Government has announced its intention to use in order to satisfy any shortfall in a forfeiture judgment? The present case gives real world context to this question and demonstrates that it raises more than a theoretical concern.

Defendants have allegedly operated an illegal international money transmitting business. The Government's position is that all funds to have ever been transferred by this illicit enterprise are forfeitable pursuant to 31 U.S.C. § 5317(c)[6] and 18 U.S.C. § 982(a).[7] If the crimes charged against Userowitz are proven, title to such funds will have already vested in the Government. Practically, however, this consequence of the "taint theory" is of little matter. Given that the

---

either statute, courts will routinely refer to cases and legislative history referring to the other statute. Id.; United States v. Miller, 26 F. Supp. 2d 415, 432 (N.D.N.Y. 1998). As such, this Court refers to these materials interchangeably.

[6] In a recent decision, the District of New Jersey held that 31 U.S.C. § 5317 – one statute under which the Government here seeks forfeiture – by its very language, only incorporates the "procedural" elements of § 853, and since the substitute asset provision of 21 U.S.C. § 853 is a substantive provision, the Government may not seek substitute assets under § 5317. United States v. Rodriguez, 430 F. Supp. 2d 388, 408 (D.N.J. 2006). Rodriguez reasoned that Congress's decision not to apply the substitute asset provision to § 5317 was an acknowledgment that money reporting offenses are not as nefarious as RICO or money laundering offenses. Id. at 406. The Court noted that the money laundering statute only allows the forfeiture of a money launderer's personal assets as substitute assets where

> such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period.

18 U.S.C. § 982(b)(2). Rodriguez concluded that the substitution of assets is thus generally reserved for more serious offenses. 430 F. Supp. 2d at 406.

[7] The Second Circuit has acknowledged that this theory of forfeiture, though harsh on intermediaries of funds whose profits are a mere fraction of the money transported, is expressly contemplated and authorized in specific instances by 18 U.S.C. § 982(a), (b)(2). United States v. Bermudez, 413 F.3d 304, 307 (2d Cir. 2005).

funds are not the profits of the criminal enterprise, but instead the object transported by the

enterprise, and further, given that such covert enterprises may be able to avoid detection for

some time, most of the specifically forfeitable assets will inevitably be gone by the time a

forfeiture order is entered.  Therefore, if the criminal forfeiture statutes are to have some

practical effect in circumstances like these, the Government needs another means through which

to obtain at least an equivalent of the assets to which it is entitled.  The forfeiture statutes'

substitute asset provisions may serve this purpose as they

> permit the removal of the apparently legitimate asset which can then
> be liquidated and returned to victims or placed in the Justice
> Department's Assets Forfeiture Fund. Because criminal forfeitures are
> *in personam* or directed against the defendant personally, the
> substitute assets provision also gives the government the ability to
> receive, in essence, a general judgment against the defendant. When
> a certain sum is alleged in the indictment as the amount of criminal
> proceeds and those proceeds can not be found after the jury enters a
> special verdict against that sum, the government can then execute
> against any other property belonging to the defendant. The advantage
> to the government from this device is that the difficult, sometimes
> impossible, task of tracing the proceeds of illicit activity to a
> particular asset is not an issue. Through the substitute assets
> procedure, the wrongdoer who has successfully laundered his
> proceeds is still divested of his ill-gotten gains.

Arthur W. Leach & John G. Malcolm, Criminal Forfeiture: An Appropriate Solution to the Civil

Forfeiture Debate, 10 Ga. St. U. L. Rev. 241, 289 n.164 (1994) (quoted in United States v. Voigt,

89 F.3d 1050, 1086 n.21 (3d Cir. 1996)); see also United States v. Huber, 404 F.3d 1047, 1056

(8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money-laundering case allows the

government to obtain a money judgment representing the value of all property involved in the

offense, including the money or other property being laundered (the corpus), and any property

used to facilitate the laundering offense.") (citation and internal quotation marks omitted).

There is, though, a yellow flag of caution, for the law is clear that the substitution of untainted property to satisfy forfeiture cannot take place until after a forfeiture order is entered. United States v. Ripinsky, 20 F.3d 359, 364 (9th Cir. 1994) ("Elsewhere, the 1983 Senate Report states that the Bill includes 'a provision authorizing the court to order the defendant to forfeit substitute assets when his property originally subject to forfeiture has been made unavailable at the time of conviction.'") (quoting S. Rep. No. 98-225, at 197-98 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3380-81); United States v. Gotti, 155 F.3d 144, 149 (2d Cir. 1998) (same); United States v. Salvagno, No. 502-cr-051, 2006 WL 2546477, at *10 (N.D.N.Y. Aug. 28, 2006) ("[T]his category of assets does not come into play in the forfeiture process until such time the Government can no longer trace assets as funds derived directly from the RICO activity."); United States v. Saccoccia, 165 F. Supp. 2d 103, 109-10 (D.R.I. 2001) ("While 'tainted' assets are immediately forfeitable, 'substitute' assets do not become forfeitable until the Court determines that the requirements of subsection (m) are satisfied and an order of forfeiture is entered."), vacated on other grounds, 354 F.3d 9 (1st Cir. 2003). Now, given that the Government cannot forfeit these substitute properties until after trial, the obvious questions are: (i) whether the Government has any colorable property interest in them prior to forfeiture, and (ii) whether the Government may restrain them prior to forfeiture.

In United States v. Gotti, the Second Circuit answered the latter question. As a matter of statutory interpretation, the Court determined that the RICO forfeiture provision does not allow for the pretrial restraint of substitute assets. Gotti, 155 F.3d at 149. Under the RICO provision,

a court may

> enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of *property described in subsection (a)* for forfeiture under this section –
>
> (A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

18 U.S.C. § 1963(d)(1) (emphasis added).  The property described in subsection (a) is specifically forfeitable property, and not substitute property, which is identified separately in subsection (m). Apparently applying the ancient canon of negative implication, *inclusio unius est exclusio alterius*, the Second Circuit reasoned that the specific reference by Congress to only subsection (a) property had the effect of directly excluding the unreferenced subsection (m) substitute property from the pretrial restraint provision.  Gotti, 155 F.3d at 148-49.  The Court made clear that it was adhering to its duty to interpret the plain language of the statute, as its holding might arguably contravene the legislative aim of preserving assets that might eventually be forfeitable.  Id. at 149-50.  Also, recognizing that such a result might contravene the stated legislative purpose, the Fourth Circuit has come to the contrary conclusion.  In re Assets of Billman, 915 F.2d 916, 921 (4th Cir. 1990); see also United States v. Scardino, 956 F. Supp. 774, 779 (N.D. Ill. 1997) (opining that the Gotti approach exalts form over substance and undermines the Government's interest in preserving potentially forfeitable property).  However, other circuit courts to address the issue have agreed with the Second Circuit.  United States v. Field, 62 F.3d 246, 249 (8th Cir. 1995); United States v. Ripinsky, 20 F.3d 359, 363-64 (9th Cir. 1994); In re

Assets of Martin, 1 F.3d 1351, 1359 (3d Cir. 1993); United States v. Floyd, 992 F.2d 498, 502 (5th Cir. 1993).

The Second Circuit's holding in Gotti also offers guidance in addressing the first question: whether the Government has any colorable property interest in substitute assets prior to forfeiture.  The relation back provision, 21 U.S.C. § 853(c), is the means by which the Government has an immediately vested right in potentially forfeitable property.  It is this statutory formulation of the common law "taint theory" that gives the *in personam* criminal action an *in rem* aspect, as a court's resolution of the criminal matter will essentially decide where proper title lies.  Under the relation back provision:

> All right, title, and interest in property *described in subsection (a)* of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(c) (emphasis added).  It is clear that this subsection raises the identical issue of statutory construction addressed in Gotti, that is, whether the inclusion of an explicit reference to property in one specific subsection of the statute (subsection (a)) acts to specifically exclude property in another unreferenced subsection (subsection (p)).  Applying the reasoning of Gotti, this Court cannot then escape the conclusion that the relation back provision does not apply to substitute assets.  This conclusion is also consistent with the common law "taint theory," which only applies the relation back principle to tainted property and not to other assets of the

defendant.[8]  See Caplin v. Drysdale, 491 U.S. at 627.

Given that the relation back provision does not apply, the Court is left with the more difficult question of when exactly the Government's interest in substitute assets might vest.  The positions on this issue are best summed up in a Report of the House Judiciary Committee:

> Current law is unclear with respect to when the government's interest in substitute assets vests. Some have argued that because the relation-back provisions of section 853(c) do not expressly apply to substitute assets, the government's interest in substitute assets does not vest until the jury returns a special verdict of forfeiture or the court enters a preliminary order of forfeiture. Others have argued that because the substitute asset is forfeited in place of property in which the government's interest vested at the time of the act giving rise to forfeiture, the government's interest in the substitute asset vests on the date on which the crimes were committed. Still another interpretation is that the government's interest in substitute assets vests at the time the grand jury returns an indictment including a substitute assets provision, because at that time the defendant and any potential claimants (including potential bona fide purchasers) are placed on notice that the defendant's estate is subject to forfeiture up to the amount of the proceeds of his criminal activity.

Civil Asset Forfeiture Reform Act, H.R. Rep. No. 105-358(I), at 64 (1997).  One court has endorsed the last view, opining that "even if the government's claim [does] not relate back to the time of [the] crime, it is not unfair for it to relate back to the date of public notice of the government's intent to obtain forfeiture."  United States v. Norton, 2:99-cr-10078, 2002 WL 31039138, at *4 n.7 (W.D. Va. Sep. 3, 2002) (citing 2 DAVID B. SMITH, PROSECUTION & DEFENSE OF FORFEITURE CASES ¶ 13.02, at 13-42 (2002)).  However, if there is anything to

---

[8]  Further, this Court's conclusion is consistent with that of the only other court in this circuit to address the issue in a similar context.  See United States v. Salvagno, No. 502-cr-051, 2006 WL 2546477, at *19 (N.D.N.Y. Aug. 28, 2006).

extrapolate from <u>Gotti</u>, it is that when a statute has clearly spoken on a matter, courts may not freely go beyond the statute's directives in order to further what the court believes to be the statute's purpose. <u>Floyd</u>, 992 F.2d at 502 ("[C]ommand for a liberal construction does not authorize us to amend by interpretation."). This Court is especially cautious about recognizing a non-statutory relation back right in substitute property because it would burden those whom the law presumes to be innocent by casting a cloud upon their title to property, which in the case of substitute assets, is not alleged to be involved in any way, shape, or form with the crimes charged.

To be sure, the relation back principle is exceptional, and it has been, and should be, applied only in limited and clearly defined circumstances. Before the passage of forfeiture statutes addressing the issue, it was not clear how far the common law relation back principle applied, and there were even doubts of whether it applied to the specific property subject to criminal forfeiture. <u>See</u> S. Rep. No. 98-225, at 196 (1983), <u>as reprinted in</u> 1984 U.S.C.C.A.N. 3182, 3379. The same doubts existed regarding proceeds derived directly from forfeitable assets. As Justice Stevens observed:

> Because we are not aware of any common-law precedent for treating proceeds traceable to an unlawful exchange as a fictional wrongdoer subject to forfeiture, it is not entirely clear that the common-law relation back doctrine is applicable.

<u>United States v. 92 Buena Vista Ave.</u>, 507 U.S. 111, 125, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). *A fortiori*, if application of the relation back principle to forfeitable property and its directly traceable proceeds is unclear without a statutory mandate, it would obviously be quite a stretch to apply the doctrine, absent a statutory directive, to property that all agree is not

traceable to the alleged illegal activity. Thus, consonant with <u>Gotti</u>, this Court holds that the

Government has no colorable property interest in substitute assets of a defendant at least until the

time of conviction.[9] <u>Cf.</u> <u>Salvagno</u>, 2006 WL 2546477, at *19 n.29 ("Because we have found

above that the $200,000 is not tainted assets but substitute assets, and in light of the fact that §

1963(c) is not applicable to substitute assets, we need not analyze further whether [the third-

party transferee] would be a bona fide purchaser for value, and had reasonable cause to believe

that the property was forfeitable. As we now know, § 1963(c) only applies to § 1963(a)

property-tainted assets."); <u>United States v. Chavez</u>, 323 F.3d 1216, 1219 (9th Cir. 2003)

(assuming that the Government's interest vests at the moment the forfeiture order was entered);

<u>Ripinsky</u>, 20 F.3d at 364 ("It is true that if substitute assets are not frozen prior to trial, they may

be transferred or concealed by the time of conviction and thus be unreachable by the

government."). Otherwise, all that is clear is that following conviction, the Government may

---

[9] Application of the relation back principle to substitute assets would create its own problems. Though this Court's holding does not rest on policy concerns, it notes the advantage of interpreting the "relation back" and "pretrial restraint" provisions congruently, mainly, that third parties need not fear entering into arm's length transactions with an individual charged with a crime. 21 U.S.C. § 853(p) allows the Government to forfeit substitute "property," and the statute defines "property" very broadly as:

(1) real property, including things growing on, affixed to, and found in land; and
(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

21 U.S.C. § 853(b). It would be troublesome if over-aggressive prosecutors could pursue those other assets in the hands of innocent third-parties after legitimate transfers, in essence forcing those third-parties to show that they lacked knowledge of the property's forfeitability. <u>See</u> 21 U.S.C. § 853(n)(6)(B). A second concern is that over-aggressive prosecutors might name in an indictment substitute assets of a much greater value than needed to satisfy an eventual forfeiture judgment. The Government's cloud on title may cripple an individual economially, and it is unclear under current law whether the defendant would have any means of pretrial review to protect against the Government coercively wielding this power. At the other pole, if a court were to find that pretrial review was appropriate, then it would seemingly be thrust into the position of having to address numerous valuation issues before trial or forfeiture proceedings have even begun. In sum, it is unclear how the Congress would resolve the competing policy concerns – particularly given the potential impact of forfeiture on innocent third party transferees. Congress's silence on these issues cautions decisively against extension of the relation back principle.

lawfully move to restrain the substitute assets and also utilize any appropriate legal device to give notice of the action's pendency.  See United States v. Numisgroup Int'l Corp., 169 F. Supp. 2d 133, 138 (E.D.N.Y. 2001).

      B.    *Availability of Lis Pendens Under New York Law*

The Government has filed notices of *lis pendens* against Userowitz's real property identified as substitute assets in the superseding indictment.  The authority to file a notice of *lis pendens* with a County Clerk in New York is provided by the New York Civil Practice Law and Rules:[10]

> A notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property, except in a summary proceeding brought to recover the possession of real property. The pendency of such an action is constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency indexed in a block index against a block in which property affected is situated or any defendant against whose name a notice of pendency is indexed. *A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party.*

N.Y. C.P.L.R. § 6501 (emphasis added).[11]  The emphasized final sentence of this statute is the very "essence of the remedy afforded by the Legislature."  5303 Realty Corp. v. O & Y Equity Corp., 64 N.Y.2d 313, 318, 486 N.Y.S.2d 877, 476 N.E.2d 276 (1984).  *Lis pendens* preserves the priority of a plaintiff's claim to a real property interest by putting potential third-party

---

[10]  The Government does not claim any basis for filing its notices of *lis pendens* other than N.Y. C.P.L.R. § 6501.

[11]  The statute refers to a notice of pendency rather than *lis pendens* or notice of *lis pendens*.  Each of these terms, however, is commonly used to refer to the provisional remedy authorized by N.Y. C.P.L.R. § 6501.

purchasers on notice of the litigation brought to vindicate that claim.  <u>Id.</u>; <u>In re Estate of Sakow</u>, 97 N.Y.2d 436, 440, 741 N.Y.S.2d 175, 767 N.E.2d 666 (2002).

*Lis pendens* by name and effect also invokes the concept of "relation back."  Chief Justice Rehnquist described it as

> a well-established, traditional remedy whereby a plaintiff (usually a judgment creditor) who brings an action to enforce an interest in property to which the defendant has title gives notice of the pendency of such action to third parties; the notice causes the interest which he establishes, if successful, to relate back to the date of the filing of the lis pendens.

<u>Connecticut v. Doehr</u>, 501 U.S. 1, 29, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (concurring).  However, *lis pendens* does not, in itself, create the property interest that is said to have vested at an earlier time; *lis pendens* merely preserves a claim of a right in property which may, depending upon the lawsuit's outcome, be said to have vested at an earlier point.  <u>Simon v. Vanderveer</u>, 155 N.Y. 377, 382, 49 N.E. 1043 (1898) ("The *lis pendens* . . . does not, of itself, create an incumbrance apart from the equity on which the action is founded."); <u>Lamont v. Cheshire</u>, 65 N.Y. 30, 36 (1875) ("It is simply a rule of law to give effect to the rights ultimately established by the decree."); <u>In re American Motor Club, Inc.</u>, 109 B.R. 595, 597 (Bankr. E.D.N.Y. 1990); <u>In re Arred Elec. Contracting Corp.</u>, 106 B.R. 353, 357 (Bankr. S.D.N.Y. 1989).  "The plaintiff filing the notice of pendency must claim some 'interest . . . in the land of a defendant which might be lost under the recording acts in the event of a transfer of the subject property' during the litigation.'"  <u>Richard J. Zitz, Inc. v. Pereira</u>, 965 F. Supp. 350, 355 (E.D.N.Y. 1997) (quoting <u>Braunston v. Anchorage Woods, Inc.</u>, 10 N.Y.2d 302, 305, 222 N.Y.S.2d 316, 178 N.E.2d 717 (1961)) (ellipsis in original); <u>In re Murphy</u>, 331 B.R. 107, 134 (Bankr. S.D.N.Y. 2005); <u>5303</u>

Realty Corp., 64 N.Y.2d at 322.  Despite the broad language of § 6501, which allows for the filing of a notice of *lis pendens* where "judgment demanded would affect the title to, or the possession, use or enjoyment of, real property," the statute is interpreted narrowly by New York courts.  Long Island City Sav. & Loan Assoc. v. Gottlieb, 90 A.D.2d 766, 766, 455 N.Y.S.2d 300 (2d Dep't 1982); 5303 Realty Corp., 64 N.Y.2d at 320-21.  Morever, where a plaintiff's claim is, "in essence only a money claim," a notice of *lis pendens* is not proper at all.  Long Island City Sav. & Loan Assoc., 90 A.D.2d at 766.  As one court has written in this context, "[l]and is unique while money is not."  Cassia v. Cassia, 125 Misc. 2d 606, 608, 480 N.Y.S.2d 84 (Sup. Ct. Westchester County 1984).  *Lis pendens* exists to protect the court's power over the unique property that is the subject matter of the litigation.  See 5303 Realty Corp., 64 N.Y.2d at 319.  Were it not for *lis pendens*, in such circumstance, the entire litigation could be rendered a nullity upon the property being transferred to an innocent third party who lacked notice.  See 1 JACK B. WEINSTEIN *ET AL.*, NEW YORK CIVIL PRACTICE ¶ 6501.01 (2006) ("The rule was intended to prevent a defendant from destroying the value of a judgment in the plaintiff's favor by conveying the disputed property during the suit.").  It is this narrow possibility that *lis pendens* protects against, and in this vein, *lis pendens* must be distinguished from attachment, a provisional remedy that exists "to secure a debt by preliminary levy upon the property of the debtor to conserve it for eventual execution."  Encore Credit Corp. v. LaMattina, No. 05-cv-5442, 2006 WL 148909, at *2 (E.D.N.Y. Jan. 18, 2006) (quoting Michaels Elec. Supply Corp. v. Trott Elec. Inc., 231 A.D.2d 695, 695, 647 N.Y.S.2d 839 (2d Dep't 1996)).  A plaintiff may not use *lis pendens* solely as a form of attachment "to prevent defendants from committing a wrongful act

against plaintiffs through the defendants' use of his land." Richard J. Zitz, Inc., 965 F. Supp. at 355 (quoting Braunston, 10 N.Y.2d at 305); 5303 Realty Corp., 64 N.Y.2d at 324.

A notice of *lis pendens,* especially one filed by the United States of America, practically speaking, denudes the subject property of its alienability. See Monsanto, 924 F.2d at 1193; Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 428 (E.D.N.Y. 2002); In re Estate of Sakow, 97 N.Y.2d at 441; 5303 Realty Corp., 64 N.Y.2d at 320 ("[T]he statutory scheme permits a party to effectively retard the alienability of real property . . . ."). Courts to address this issue, that is, where the Government seeks to file a notice of *lis pendens* on substitute assets, have nonetheless concluded that *lis pendens* does not constitute the type of pretrial restraint that the Second Circuit held was unauthorized in Gotti. United States v. Lebed, No. 05-362-01, 2005 WL 2495843, at *10 (E.D. Pa. Oct. 7, 2005); United States v. Miller, 26 F. Supp. 415, 432 n.15 (N.D.N.Y. 1998); United States v. Field, 867 F. Supp. 869, 873 n.4 (D. Minn. 1994); see also Diaz v. Pataki, 368 F. Supp. 2d 265, 273 (S.D.N.Y. 2005) (*lis pendens* does not itself prevent the owner from alienating property). Those courts have apparently reasoned that an effective restraint as a matter of fact is not the equivalent of a restraint obtaining as a matter of law. The Eleventh Circuit similarly drew this distinction when holding, in the criminal forfeiture context, that *lis pendens* does not affect property interests to the extent necessary to implicate the due process clause. United States v. Register, 182 F.3d 820, 836-37 (11th Cir. 1999); see also United States v. Rivieccio, 661 F. Supp. 281, 297 (E.D.N.Y. 1987).

The Court need not take exception here with how other courts have addressed the nature of the restraint created by *lis pendens*. In Gotti, the Second Circuit simply held that the

forfeiture provision did not authorize the pretrial restraint of substitute assets; the Court did not hold that the statute affirmatively took away any other right to which the Government may have already been entitled.  The Government latches on to this point, arguing that Gotti does not, by implication, bar it from filing notices of *lis pendens* on substitute assets because *lis pendens* is not a pretrial restraint.

The Government's argument stumbles over the threshold.  The issue here is not whether a notice of *lis pendens* is a pretrial restraint of property barred by federal law as interpreted in Gotti; rather, the issue is whether state law, in this case New York's, authorizes the filing of a notice of *lis pendens* on these facts at all.  Again, C.P.L.R. § 6501 creates no interest in property as it merely provides a legal device to prioritize an existing claim of right in property.  Succinctly, given this Court's holding that 21 U.S.C. § 853 cannot serve as the basis for a "relation back" interest in substitute assets, the Government has no colorable interest in substitute assets until it obtains a conviction. Even then, since the substitute assets are not "tainted assets," they only come into play when needed to satisfy a shortfall.  Under the current statutory scheme, then, substitute assets are used only to satisfy what is a money judgment.  Cf. United States v. Casey, 444 F.3d 1071, 1077 (9th Cir. 2006) ("The criminal forfeiture statute mandates imposition of a money judgment on substitute property . . . ."); Huber, 404 F.3d at 1056 ("Forfeiture under section 982(a)(1) in a money-laundering case allows the government to obtain a money judgment representing the value of all property involved in the offense."); Salvagno, 2006 WL 2546477, at *13 ("And it is for these very reasons that Congress enacted § 1963(m)--to allow the Government to secure substituted assets to satisfy the money judgment.").

All of this brings the Government to its final roadblock: *lis pendens* is unavailable in New York where the subject claim is "in essence only a money claim." <u>Long Island City Sav. & Loan Assoc.</u>, 90 A.D.2d at 766; <u>Alternate Energy Mgmt. Corp. v. Fontana</u>, 141 A.D.2d 482, 482, 529 N.Y.S.2d 712 (2d Dep't 1988).

Under no circumstances, consequently, is *lis pendens* available to the Government with regard to Userowitz's untainted real property. Unlike specifically forfeitable property, Userowitz's substitute properties are not the subject matter of the pending indictment, nor are these proceedings about a colorable interest in the property that the Government claims it now has and is now litigating to vindicate. Indeed, the only relationship the substitute assets have to the criminal proceeding is as a potential asset source that may be used to satisfy a shortfall in a potential forfeiture money judgment. The Government's motivation, of course, is clear. It is not concerned that Userowitz's substitute assets are the subject matter of the indictment, which if conveyed away to a *bona fide* purchaser, would render the prosecution a nullity; instead, it is concerned that Userowitz will convert his assets to a more liquid form which may be dissipated, and thus become unavailable to satisfy a potential *in personam* judgment of forfeiture. This is not a legitimate purpose for *lis pendens*. Therefore, since the Government has failed to show any colorable legal interest in Userowitz's real property that would relate back to the time of the crime or even to when the superseding indictment was filed, and since a judgment of conviction in and of itself cannot affect title to the identified substitute assets, the Court concludes that the Government had no authority to file notices of *lis pendens* with respect to these assets. The notices of pendency must be declared a nullity and ordered vacated.

**CONCLUSION**

For the foregoing reasons, defendant Userowitz's motion for the return of all funds seized from his account at J.P. Morgan Chase Bank is granted, but this portion of the Order is stayed until December 15, 2006, during which time the Government must either obtain a criminal seizure warrant from this Court or release the seized funds. The branch of defendant Userowitz's motion that seeks to vacate notices of *lis pendens* is also granted but forthwith. Upon the filing of a copy of this Memorandum and Order with the County Clerks for the Counties of Nassau and Suffolk, any notice of pendency filed by the United States of America against any real property of defendant Isadore A. Userowitz, a/k/a "Arthur Userowitz," in connection with the instant criminal proceeding, shall be canceled and be of no further effect. The attorneys for the United States of America are directed to take all steps necessary to facilitate the cancellation of the subject notices of pendency. The Order on this branch of the motion, however, is stayed until December 12, 2006 at 5 p.m. to permit the Government to seek, should it so choose, a further stay by the United States Court of Appeals for the Second Circuit pending appeal.

**SO ORDERED.**

Dated: Brooklyn, New York
           December 8, 2006

                                                      / s / Eric N. Vitaliano
                                                      ERIC N. VITALIANO
                                                      United States District Judge