UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
                - against -                              :
HAMAD ALI                                                   :
      also known as "Ahmed Jeran,"                         :
HAMOOD ZOKARI,                                              :      MEMORANDUM OPINION
ISADORE A. USEROWITZ                                        :
      also known as "Arthur Userowitz"                     :      1:06-cr-200 (ENV)
HAROLD WEISBERG,                                            :
NAGI ALOMARI,                                               :
ABDUL JALIL                                                 :
      also known as "Abdo Zokari"                          :
MOHAMMED KHUBANI                                            :
      also known as "Hamood Alhudais"                      :
MOHAMMED ALGAHIM,                                           :
      also known as "Mohamed Kaid"                         :
SALEM AL-MERDAI,                                            :
ABDO ALWASIA and                                            :
MOHSEN HUDYIH,                                              :
                                                            :
                Defendants.                              :
                                                            :
------------------------------------------------------------X

VITALIANO, D.J.

      Defendants Hamad Ali, Mohsen Hudyih, Abdul Jalil, Isadore Userowitz, Harold Weisberg and Hamood Zokari near a long-awaited trial date on charges of operating an unlicensed money transmitting business, conspiracy to operate such a business, evading the monetary instrument exportation reporting requirements and conspiracy to evade those requirements. In limine, the government opposed defense motions to exclude and moved affirmatively for permission to offer in evidence certain checks determined by the Court to be outside the bounds of the reporting requirements. The government's argument for admissibility on these counts rests on its claimed ability to offer proof at trial that the defendants sought to

conceal these checks from United States Customs because they erroneously believed them to be subject to the reporting requirements, thus rendering their conduct probative of the conspiracy to evade the reporting requirements.

The Court granted the defense motions and denied the government's on the record in open court during two pretrial conferences. The Court, however, informed the parties that this Memorandum Opinion, supplementing and explaining the ruling, would follow.

## **BACKGROUND**

With the jury selected, the trial is scheduled to open on March 10, 2008. Defendants are each charged in four counts of (a) operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), (b) conspiracy to operate such a business, (c) evasion of monetary instrument reporting requirements in violation of 31 U.S.C. § 5316 and § 5324 and (d) conspiracy to evade those requirements.

Under the exportation reporting requirements, a person knowingly transmitting more than $10,000 in defined monetary instruments is required to file a report. 31 U.S.C. § 5316. Monetary instruments, as defined by the applicable regulations, include cash currency, traveler's checks and "negotiable instruments," further defined as

> All negotiable instruments (including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes (as that term is defined in the Uniform Commercial Code), and money orders) that are either in bearer form, endorsed without restriction, made out to a fictitious payee (for the purposes of § 103.23), or otherwise in such form that title thereto passes upon delivery [.]

31 C.F.R. § 103.11(u)(1)(iii). The Court ruled that several categories of checks the government

had assembled as proof fell outside this defined universe, and thus their transport would not have constituted the crime. The government has argued, at oral argument and in three subsequent letter briefs, and continues to maintain, that the excluded checks should nevertheless be admissible to prove the alleged conspiracy to evade the monetary reporting requirements. To this end, the government proffers that, at trial, it would deploy intercepted phone conversations and post-arrests statements of the defendants in support of the factual premise that "the defendants and their co-conspirators were convinced that all of the checks they were transporting were instruments subject to the reporting requirements." Gov't Ltr. of Feb. 26, 2008 at 4. The government argues that the defendants would thus still be guilty of conspiring to evade the monetary requirements even if none of the reporting requirements applied to the checks actually exported.[1] The government seeks to offer these checks in addition to evidence of currency and instruments of the kind subject to the reporting requirements.

## DISCUSSION

The conspiracy charges, of course, are brought pursuant to 18 U.S.C. § 371. Under that section, it is illegal for two or more persons to conspire to "commit any offense against the United States" or "to defraud the United States, or any agency thereof in any manner or for any purpose." Id. The present invocations of § 371 fit the former category, with the conspiracy charges linked to the substantive offenses of evading the monetary reporting requirements and operating an unlicensed money transmitting business.

Conspiracy is a crime separate and apart from the substantive offense that is the object of

---

[1] Of course, the government intends to offer evidence of currency and monetary instruments of the type that the Court has ruled are within the statutory definitions. The excluded checks are cumulative of this proof.

3

the conspiracy.  United States v. Feola, 420 U.S. 671, 95 S. Ct. 1255 (1975).  However, by the statutory definition of conspiracy provided in § 371, a conspirator must have conspired to commit an actual "offense against the United States."  As the Second Circuit articulated in one of the very cases upon which the government relies, "[j]urisdiction is established by proof that the accused planned to commit a substantive offense which, if attainable, *would have violated a federal statute*, and that at least one overt act has been committed in furtherance of the conspiracy."  United States v. Giordano, 693 F.2d 245, 249 (2d Cir. 1982) (emphasis added).  The Giordano court went on to explain that the key to a valid conspiracy charge is "whether facts exist 'tying the proscribed conduct to the area of federal concern delineated by the statute.'"  Id., citing Feola, 420 U.S. at 695.

The reporting of instruments beyond those enumerated in the statute clearly lies beyond the realm of federal concern delineated by that statute.  As a result, because the checks under scrutiny in the in limine motions were not subject to the reporting requirements, there is no violation in not reporting their report.  Stated differently, since the conduct allegedly underlying the conspiracy was not a crime, no § 371 conspiracy to commit that conduct can exist either.

The government, nevertheless, insists that defendants' misimpression that those instruments were subject to the reporting requirement provides a basis for conspiracy liability as to those instruments.  In support of this proposition, the government refers to a number of cases in which conspiracy indictments or convictions were upheld where the underlying conduct was, in fact, unattainable.  See, e.g., Giordano, 693 F.2d at 249-50 (defendants plotted to destroy by explosives a fictitious piano store); United States v. LaBudda, 882 F.2d 244 (7th Cir. 1989) (upholding conviction for conspiring to sell stolen U.S. savings bonds where bonds were not, in

4

fact, stolen).

The government, however, misses a crucial distinction between two very different obstacles to the successful commission of a crime: (1) the factual impossibility of achieving the offending conduct and (2) the actual legality of the conduct. Simply put, in Giordano and LaBudda, defendants undertook to commit acts that were clearly illegal under federal statutes. Their failure to commit an offense was due to a misapprehension by the conspirators as to facts that made it impossible for them to commit the crime. Such a misperception by a defendant of the contours of physical or otherwise factual possibility does not render that defendant any less culpable of plotting the underlying, illegal intended conduct. What distinguishes this case is that the underlying intended conduct at issue is not illegal. The defense does not argue that the goal was factually unattainable. They argue that the goal was not even criminal.

The government, perhaps sensing the central flaw in its argument and the obvious distinction between impossibility due to fact and impossibility due to law, offers several instances in which courts have found "legal impossibility" no defense to a conspiracy. See, e.g., United States v. Trapilo, 130 F.3d 547 (2d Cir.1997) ("Where, as here, an indictment alleges conspiracy, legal impossibility affords a conspirator no defense"); United States v. Hsu, 155 F.3d 189, 203 (3d Cir. 1998) ("Legal impossibility is not a defense to conspiracy"). Each of these cases uses the label "legal impossibility" to refer to the impossibility of actually accomplishing the intended plot, but in none was there any question that if the plot had succeeded the conduct itself would be criminal. In Trapilo, in which the defendants were accused of scheming to defraud a foreign government of tax revenue, the conduct allegedly attempted would have clearly violated the broad underlying statute at issue had the defendants succeeded. In Hsu, the Third

5

Circuit confronted the issue of whether a trade secret had to exist in order for a charge of conspiring to steal trade secrets could be brought. Once again, the underlying intended conduct (the intended theft of processes, methods, and formulas thought to be trade secrets) was, in fact, illegal. The "legal impossibility" language, as invoked by the government here, is not only unhelpful but serves to obscure the single salient question – whether the ends were actually illegal.

Finally, the government offers <u>United States v. Nersesian</u>, 824 F.2d 1294 (2d Cir. 1987), in support of the proposition that the proffered evidence is probative of the charge that the defendants "structured" monetary instruments subject to the act in order to circumvent the reporting requirements, i.e., that defendants also "structured" instruments not covered by the act. In <u>Nersesian</u>, the defendant had been found guilty of a conspiracy to defraud the IRS even though he himself had no duty to report the subject transaction to the IRS. Critically, the <u>Nersesian</u> Court held that bank customers who intentionally and with knowledge of the reporting requirements structured their transactions so as to intentionally cause a bank to fail to comply with reporting requirements commit a crime. <u>Nerserian</u>, 824 F.2d at 1312. Nonwithstanding, <u>Nerserian</u> is no different than the other decisions upon which the government relies. The underlying conduct in <u>Nersesian</u> – the bank's failure to comply with reporting requirements – was wrongful conduct; it was induced through an knowing, intentional and willful act by the defendant causing the transaction not to be reported even though the duty to report it was not his. Here, the presence or absence of the duty to report is at the *very essence* of the statute defining the criminal conduct charged. Put another way, in <u>Nerserian</u>, although the defendant did not have a duty to report, he knew and intended his structuring to cause the bank not to comply with

6

its duty to report. Here, if defendants were not required to report the "structured" transfers because even as "structured" the instruments were still not covered by the reporting requirements, then no one was required to report and the failure to report — the intended and accomplished end — was not criminal.[2]

As the government observes, the Second Circuit held that "[t]he law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed. Criminal intent has crystallized, and the likelihood of actual, fulfilled commission warrants preventive action… Conspiracy is a crime separate and apart from the substantive offense that is the object of the conspiracy." United States v. Wallach, 935 F.2d 445, 470 (2d Cir. 1991) (citation omitted). What is vital to the crime is the underlying criminal objective. The observed threat to social order comes not from the naked possibility of "conspiring to conspire,"[3] but from the possibility that individuals are planning on, and acting in furtherance of, conduct that is actually illegal. For this reason, where the underlying intended act is criminal but not physically attainable, the criminal act has crystallized and conspiracy law allows the government to react accordingly. Where the act contemplated is not criminal, nothing criminal has crystallized, and any perceived threat to social order dissipates. It matters not that the alleged conspirators mistakenly believe that they are actually agreeing to do something the law forbids.

---

[2] The government further argues that it does not have to demonstrate that every act committed in furtherance of the conspiracy is a criminal act, i.e., that every monetary instrument transported was subject to the reporting requirements. The Court is not imposing such a burden. The fact is that the government has made no showing of how the transport of the checks not subject to reporting furthered a conspiracy to evade reporting requirements for those that were subject to the reporting requirement.

[3] TRAFFIC (USA Films 2000).

7

It is beyond troubling for the Court to contemplate a legal world in which particularly misguided individuals, assuming their actions run afoul of the law when they in fact do not, carve out their own realms of criminal activity beyond the contemplation of even the Congress. In this self-defined regime of hypothetical conspiracy law, the realm of criminalizable conduct would be bound only by the degree to which potential defendants are misinformed, misguided or simply stupid.  Although such traits have paved the road for many to run afoul of the law, the bounds of the criminal law are for the Congress alone to determine.

## **CONCLUSION**

For the foregoing reasons, the Court granted the in limine motions of the defense and denied that of the government.  Accordingly, checks determined by the Court not to be monetary instruments under the statutory definition of 31 C.F.R. § 103.11(u) are inadmissible to prove the charge of conspiracy to evade the monetary exportation reporting requirements.


Dated:       Brooklyn, New York
              March 7, 2008

                                          /s/ Eric N. Vitaliano____
                                          ERIC N. VITALIANO
                                          U.S.D.J.